[Civ. No. 7866. First Appellate District, Division Two.—August 27, 1931.]

EDGAR OWENS, Appellant, v. CARMICHAEL'S U-DRIVE AUTOS, INC. (a Corporation), Respondent.

A. A. Heer, H. A. Frank, Marvin C. Hix and Joseph T. Curley for Appellant.

Frank T. McGrath and Henry Heidelberg for Respondent.

SPENCE, J.—Plaintiff brought this action seeking to recover damages against defendant Carmichael's U-Drive Autos, Inc., for personal injuries inflicted upon plaintiff when struck by an automobile belonging to defendant. The trial court directed a verdict in favor of defendant and from the judgment entered upon the directed verdict plaintiff appeals.

The accident occurred on the evening of August 7, 1928. The driver stopped the car a short distance from the scene, disappeared without being identified, and has not been seen since. It appeared that about one hour prior to the accident defendant had rented the car to a man who gave his name as Max Watson. It is conceded that there was ample evidence to show that the driver of the car negligently drove it over the curb and struck plaintiff while he was standing on the sidewalk, but defendant based his motion for a directed verdict upon the ground that the

evidence was insufficient to go to the jury on the question of the liability of defendant as owner of the car.

At the time of the accident section 1714¼ of the Civil Code had not been enacted and by his complaint plaintiff sought to impose liability on defendant as owner by alleging that defendant "negligently let and hired" the automobile to Watson; that defendant "negligently permitted Watson to drive and operate said automobile upon the highway"; that "defendant knew . . . that said Max Watson was not competent to operate" said automobile; and "that said Max Watson was not licensed to drive or operate any automobile upon such highway". In other words, the gravamen of plaintiff's cause of action was: the alleged negligence in entrusting the car to Watson. These allegations of the complaint were sufficient, for it is well settled that liability may be imposed upon an owner who negligently entrusts his automobile to another. *(Rocca* v. *Steinmetz,* 61 Cal. App. 102 [214 Pac. 257], and cases cited.) Such negligence is most frequently predicated upon the fact that an owner knowingly entrusts his car to an incompetent person, but we do not believe that the owner is liable solely in those cases where such showing is made.

The charge being that of negligence, the standard by which the conduct of the owner is to be measured is the general one based upon the care which an ordinarily prudent person would exercise under similar circumstances and the question whether a particular owner's conduct measures up to that standard is ordinarily a question of fact for the jury. (19 Cal. Jur., p. 729; 42 C. J., p. 1261.)

Appellant contends that the evidence introduced was sufficient to make out a *prima facie* case against respondent as owner, and in our opinion this contention must be sustained. Before discussing the evidence surrounding the renting of the car, we will first dispose of respondent's contention that there is no evidence to show that Watson was driving at the time of the accident and the further contention that there is no evidence to show that Watson did not have a driver's license. With respect to the first contention it appeared that Watson rented the car and was unaccompanied as he drove it from respondent's establishment about one hour before the accident. From this evidence the jury would have been warranted in finding that Watson was

driving at the time of the accident. (Code Civ. Proc., sec. 1963, subd. 32; *Sutton* v. *Tanger,* 115 Cal. App. 267 [1 Pac. (2d) 521].) ▊ In an endeavor to prove that Watson did not have a driver's license, search was made in the files of the division of motor vehicles, which files contain some 4,000,000 names. Employees of the division testified giving the names and addresses of licensed persons bearing the name "Max Watson" and depositions of these persons were taken and introduced to prove that none of them had rented the car involved in the accident. It is true, as contended by respondent, that there was no testimony relating to persons licensed under names such as "M. Watson" "M. D. Watson" or other similar names containing the initial "M", but we do not believe this was essential. It is well settled that slight proof makes out a *prima facie* case when a negative is to be proved. (10 Cal. Jur. 789, 1158.)

▊ Turning to the facts surrounding the renting of the car to Watson, the evidence showed that respondent was engaged in the business of renting cars without drivers; that Watson, who was unknown to respondent, applied for a car at about 7 P. M. on the night of the accident; that Watson had no driver's license but produced a "driver's temporary permit" issued that same day by the division of motor vehicles and designated by them as a "student's permit", which permit entitled the holder to drive motor vehicles for thirty days but only when accompanied by a licensed driver; that Watson was unaccompanied at the time he rented the car as well as at the time of the accident; that as Watson did not have "the customary operator's license", respondent's station clerk had him back the car "up and down the floor a couple of times" and then permitted him to take it after signing a 24-hour contract and making the required deposit.

Respondent argues that the fact that it violated section 76 of the California Vehicle Act by knowingly entrusting the car to an unlicensed person is immaterial, citing *Perry* v. *Simeone,* 197 Cal. 135 [239 Pac. 1056], and *Arrelano* v. *Jorgensen,* 52 Cal. App. 622 [199 Pac. 855]; but as those cases were decided prior to the amendment in 1927 of section 63 of the California Vehicle Act we do not believe that they are determinative. That section now requires the examination of all persons applying for licenses, and an

operator's license is no longer merely a means of identification .but is in effect a certificate evidencing the fact that the holder had demonstrated his competency. Under these circumstances, we believe that the violation of the statute is material. (*Cragg* v. *Los Angeles Trust Co.*, 154 Cal. 663 [16 Ann. Cas. 1061, 98 Pac. 1063]; *Andreen* v. *Escondido Citrus Union*, 93 Cal. App. 183 [269 Pac. 556].) The distinction between violations of statutes which are designed for the protection of the public and violations of statutes which have no such purpose is pointed out in *Austin* v. *Rochester Folding Box Co.*, 111 Misc. Rep. 292 [181 N. Y. Supp. 275]. In our opinion, where an examination is required to test the competency of the applicant before the issuance of an operator's license and it is provided by statute that no person shall knowingly permit his motor vehicle to be driven by an unlicensed person, a showing of a violation of the statute by the owner makes out a *prima facie* case against him in favor of a person who has sustained injury through the negligence of such unlicensed driver. (*Correira* v. *Liu*, 28 Hawaii, 145.) As is said in the concurring opinion in that case at page 154, "The fact that Miller was unlicensed is evidence *prima facie* in the eyes of the law that Miller was incompetent and that Correira committed a breach of his common-law duty not to entrust his car to a driver who was known to him to be incompetent or who, under the circumstances, should have been known to him to be incompetent and was sufficient to put Correira upon inquiry as to Miller's competency or incompetency."

In the present case, respondent knew that Watson had no driver's license but possessed merely a temporary permit allowing him to drive provided he was accompanied by a licensed driver. This knowledge was sufficient to put respondent upon inquiry as to the competency of Watson, and it was for the jury to determine whether under these circumstances respondent was negligent in permitting Watson, after backing the car up and down the floor a couple of times, to drive the car upon the highway unaccompanied by a licensed driver.

For the foregoing reasons, we are of the opinion that the trial court erred in directing a verdict in favor of respondent.

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.