[Civ. No. 10223.   Third Dist.   Feb. 13, 1962.]

JACK WEYBURN, Plaintiff and Appellant, v. CALIFOR-
NIA KAMLOOPS, INC., et al., Defendants and Re-
spondents.

John E. Nolan and Robert A. Kaiser for Plaintiff and Appellant.

Newton & Braun and Newton, Braun & Goodrich for Defendants and Respondents.

PIERCE, J.—The trial court, after plaintiff's opening statement, granted defendants' motion for a nonsuit both on the pleadings and on the opening statement. Our review of the pleadings and opening statement convinces us judgment of nonsuit was improper.

A digest of the allegations of the complaint shows defendant California Kamloops, Inc., a California corporation, which owned and operated lands on Shasta Lake as a sportsmen's camp, invited plaintiff onto said lands and so negligently maintained, operated, and controlled said premises as to cause them to be dangerous and defective in that a metal pipe was allowed to project above the surface of the ground by reason of which plaintiff was caused to fall, suffering disabling injuries.

A judgment of dismissal, which has the effect of a judgment on the merits (Code Civ. Proc., § 581c) was unjustified on these pleadings. (*Smith* v. *Kern County Land Co.*, 51 Cal.2d 205 [331 P.2d 645].)

Extension of the allegations by the opening statement of plaintiff's counsel brought out that one Arnold Nobriga, a member of defendant corporation, had invited plaintiff to join him and others on a fishing and hunting excursion, based at one of the corporation's campsites. The party on arrival had "checked in" with the corporation's caretaker, had obtained his approval to the particular campsite selected and had pitched their tents. Nobriga's tent adjoined plaintiff's. There followed an afternoon of fishing, a morning of deer hunting, and a second afternoon in which members of the party assisted the caretaker in repairing a damaged wharf.

The accident happened at 9 p.m. that night. The party had retired for the night, plaintiff had partially undressed when he remembered he had not ascertained the planned time to arise the next morning. He walked from his tent into

Nobriga's and obtained this information. Returning he tripped and fell over a projecting jagged pipe, and suffered a deep "gouging" laceration of his leg.

The offending pipe had been driven into the ground as a stake to support a board revetment of a dirt fill constructed and maintained by defendant corporation to level off this particular campsite built on a natural slope.

The rest of the opening statement relates to first aid efforts, medical diagnosis, treatment, prognosis, care, the nature and extent of plaintiff's disability, etc. It closed with the following statement:

"The evidence will show the authority exercised over this campsite by Kamloops. That the pipe having been there for some time, that this was a negligent act on their part. They owed the duty of reasonable care towards Mr. Weyburn, and because of their not exercising that, and through their negligence, that this injury was suffered. . . ."

A motion for nonsuit may be granted and judgment of dismissal entered in a proper case. (Code Civ. Proc., § 581c.) The motion must be denied, however, when it is made at the conclusion of plaintiff's case "if there is any substantial evidence which, with the aid of all legitimate inferences favorable to plaintiff, tends to establish the averments of the complaint." (*Libby* v. *Conway*, 192 Cal.App.2d 865, 868 [13 Cal.Rptr. 830], citing a few of countless cases.)

The rule stated above applies, *a fortiori,* to a nonsuit upon an opening statement, which is a dangerous unfavored practice, akin to sustaining a demurrer without leave to amend. (*Rodin* v. *American Can Co.,* 133 Cal.App.2d 524 [284 P.2d 530], at p. 534; *Kaukonen* v. *Aro,* 142 Cal.App.2d 502 [298 P.2d 611].) The case last cited, at page 504, evidently in a search for a common denominator to guide a determination of propriety of use, makes a painstaking review of cases which have upheld the granting of opening statement nonsuits. The cases there cited illustrate that such judgment is proper " 'only where it is clear that *counsel has undertaken to state all of the facts which he expects to prove,* and it is plainly evident that the facts thus to be proved will not constitute a cause of action.' " (Emphasis added.) (*Greenwood* v. *Mooradian,* 137 Cal.App.2d 532, 537 [290 P.2d 955]; see also *Bias* v. *Reed,* 169 Cal. 33, 37 [145 P. 516]; *Paul* v. *Layne & Bowler Corp.,* 9 Cal.2d 561 [71 P.2d 817].) Counsel's opening statement here did not purport to state all the facts he expected to prove.

The court here, therefore, did not heed the italicized portion of the rule above quoted, as the discussion hereinafter will illustrate.

The trial judge believed that plaintiff was a licensee at best. Defendants argued, and the trial court accepted the view, that an economic benefit of some kind to defendants from plaintiff's presence was necessary to constitute him an invitee. That is the view expressed in Restatement of Torts, section 332, although it uses "business visitor" in preference to "invitee," and describes two kinds, (1) the usual type illustrated by the store customer, and, (2) the invitee coming onto the defendant's premises for a purpose of his own, but directly or indirectly connected with defendant's use of the land, e.g., the delivery man delivering his own product to a residence.

Dean Prosser suggests:

"The alternative theory . . . is that the basis of liability is not any economic benefit to the occupier, *but a representation to be implied when he encourages others to enter to further a purpose of his own, that reasonable care has been exercised to make the place safe for those who come for that purpose."** (Emphasis ours.) (Prosser on Torts (2d ed.) § 78, p. 455.)

He uses an illustration on page 456 which has significance here:

". . . The distinction is one between the landowner who tacitly permits the boys of the neighborhood to play baseball on his vacant lot, in which case they are only licensees, and the man who installs playground equipment and throws the lot open gratuitously to the children of the town as offered and provided for that purpose, in which case there is a public invitation."

Professor Prosser reiterates this illustration on page 264 of his article, Selected Topics on the Law of Torts, pages 243-301 (1953), chapter V, "Business Visitors and Invitees." This article includes a review of cases and states, at page 301:

"When premises are not open to the public, the individual may still be entitled to protection if he enters under circumstances which give him reasonable assurance that care has been taken to make the place safe for his reception."

---

*Prosser states: "The Restatement notwithstanding, the second theory is now accepted by the great majority of the courts, and many visitors from whose presence no shadow of pecuniary benefit is to be found are held to be invitees." (Prosser on Torts (2d ed.) § 78, p. 456.)

The article concludes with the following: "The Restatement of the Law of Torts is wrong."

We really need not concern ourselves here with the niceties of the debate. The granting of the nonsuit, under the circumstances disclosed, was improper whichever view is accepted.

The following California cases have relevancy to the matter under discussion:

*Rovegno* v. *San Jose K. of C. Hall Assn.*, 108 Cal.App. 591 [291 P. 848], where a nonsuit was reversed in a wrongful death caused by drowning in an incorporated association's swimming pool. (Decedent was a member.) The court held that the care required by the owner of such a private pool "would approximate" that chargeable to the public pool proprietor.

*King* v. *New Masonic Temple Assn.*, 51 Cal.App.2d 512 [125 P.2d 559], held the owner of a hall rented by the Long Beach Woman's City Club for meetings was liable to exercise reasonable care for the safety of a woman club member who had fallen after the removal of a step.

A series of landlord and tenant cases classify persons injured in areas maintained by the landlord as "invitees," irrespective of whether they were tenants or guests of tenants. (*Sockett* v. *Gottlieb*, 187 Cal.App.2d 760 [9 Cal.Rptr. 831] ; *Yazzolino* v. *Jones*, 153 Cal.App.2d 626 [315 P.2d 107] ; *Rau* v. *Redwood City Woman's Club*, 111 Cal.App.2d 546 [245 P.2d 12].)

In *Laidlaw* v. *Perozzi*, 130 Cal.App.2d 169 [278 P.2d 523], plaintiff, who was cohostess with defendant at the latter's home, fell down dangerous cellar stairs after opening a door, usually kept bolted but left unbolted on the occasion of the accident. The court infers that plaintiff was an invitee, but holds that even if she were a licensee a jury could find defendant had violated a duty of care.

A number of cases hold that these are normally questions of fact for the jury. (*Cain* v. *Friend*, 171 Cal.App.2d 806 [341 P.2d 753] ; *Laidlaw* v. *Perozzi, supra*; *Gastine* v. *Ewing*, 65 Cal.App.2d 131 [150 P.2d 266].)

This statement of cases, not exhaustive, is sufficient to point out that neither the facts pleaded nor the opening statement precluded the production of evidence proving that the plaintiff here was an "invitee" or "business visitor." This is true whether the "economic benefit" rule of the Restatement or the "representation implied by encouragement" theory stated by Dean Prosser, be applied.

Plaintiff, in his opening statement, did not purport to state all the evidence he expected to offer. Pictures were referred to which were not yet introduced in evidence. Details of the construction of the revetment and explanation of why a wound-producing jagged-edged pipe stake had been left exposed 18 inches were not before the court and jury. The corporate purposes of defendant California Kamloops were not stated. Even its claimed status (by defendant) as a nonprofit corporation was not established (although it is not pointed out wherein this would affect plaintiff's position as an invitee). The relations between the corporation and its members, and the obligations of the former to the latter, were not stated; nor were the corporation's title and occupancy of the land. It could not be said whether or not members had been encouraged to bring guests onto the land as a means of encouraging solicitation of new members. Actually it could not even be conclusively found that conditions did not exist under which defendant would have been liable to a licensee. All of these possibilities, and others, had had cursory blanket coverage in one sentence in plaintiff's opening statement: "The evidence will show the authority exercised over this campsite by Kamloops"; and by counsel's general allusions to defendants' failure to exercise reasonable care.

Code of Civil Procedure section 581c is designed to speed litigation and save the expense of fruitless lawsuits where no possibility exists that a cause of action can be proved. It has the opposite effect when improperly applied. This accident happened in September of 1958. It was on trial in June of 1960. By the time it reaches trial again four years will have elapsed. The particular danger in granting a nonsuit on an opening statement is that rarely does a plaintiff, in an opening statement, so explicitly, fully and unequivocally expose the limitations of his client's case that the court can be sufficiently sure of the impossibility of proof of a cause of action to terminate the litigation abruptly. For statistical evidence of this check the opening statement nonsuit reversals in 42 West's California Digest, "Trial," section 109; 9 McKinney's New California Digest, "Dismissal, Discontinuance and Nonsuit," section 30; West's Annotated Code of Civil Procedure, section 581c, note 5.

The judgment is reversed.

Peek, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied March 9, 1962.